BELLECOURT et al., Appellants,

v.

CITY OF CLEVELAND et al., Appellees.

[Cite as *Bellecourt v. Cleveland,* 152 Ohio App.3d 687, 2003-Ohio-2468.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 80193.

Decided May 15, 2003.

Terry H. Gilbert, for appellants.

Thomas J. Kaiser, Chief Trial Counsel, and Joseph G. Hajjar, Assistant Law Director, for appellees.

Jillian S. Davis and ACLU of Ohio Foundation, Inc.; Raymond Vasvari, Legal Director of ACLU of Ohio Foundation, Inc., for American Civil Liberties Union of Ohio.

PATRICIA ANN BLACKMON, Judge.

{¶ 1} Vernon Bellecourt and four other individuals appeal from a directed verdict granted by the common pleas court in connection with their Section 1983, Title 42, U.S.Code action against the city of Cleveland and several police officers.

The police officers arrested them for aggravated arson after they burned an effigy of Chief Wahoo outside Jacobs Field at the opening game of the 1998 Cleveland Indians baseball season. On appeal, they assign the following errors for our review.

{¶ 2} "I. The trial court erred in granting the motion for summary judgment filed by David Regetz and thereby preventing appellants from adding him as a defendant in their lawsuit."

{¶ 3} "II. The trial court erred in granting appellees' motion in limine which prevented appellants from introducing evidence of a pattern of conduct by the appellees."

{¶ 4} "III. The trial court erred in granting appellees' motion for a directed verdict in their favor at the close of all of the evidence when appellants had presented evidence sufficient to be submitted to the jury for its consideration and there were conflicts in testimony which should have been resolved by the jury."

{¶ 5} "IV. The demeanor of the trial court before and during trial and its conduct of the proceedings raise questions as to its impartiality and ability to provide a fair trial to appellants."

{¶ 6} Having reviewed the record and pertinent law, we affirm the judgment of the trial court regarding Rocco Pollutro, the city's police chief at the time of the incident, but reverse its judgment regarding the city of Cleveland, and accordingly remand the case for further proceedings consistent with this opinion. The apposite facts follow.

{¶ 7} On April 10, 1998, at the opening game of the Cleveland Indians baseball season, Vernon Bellecourt, Juan Reyna, James Watson, Charlene Teters, and Zizwe Tchiguka[1] participated in a demonstration outside Jacobs Field to protest the Cleveland baseball team's use of the name "Cleveland Indians" and its use of "Chief Wahoo" as the team mascot.[2] These demonstrators marched to Jacobs Field carrying signs, then made speeches on a sidewalk outside Jacobs Field on Ontario Street, an area cordoned off with metal barricades and also surrounded by individuals from the city's community relations department, who acted as

---

1. On the arrest records, this individual was listed under his legal name, "Starling Perryman."

2. The Chief Wahoo mascot was created by Walter Golbach, a 17–year–old artist, for the owner of the Indians baseball team in 1948, and has undergone several transformations since then. In his analysis of the Chief Wahoo image, Dr. Robert Bane of John Carroll University described the feather on Chief Wahoo's head as a denigration of a sacred symbol, and its grinning buck teeth and hook nose as caricatures of real people. See Guggenheim, The Indians Chief Problem: Chief Wahoo as State Sponsored Discrimination and a Disparaging Mark (1998), 46 Cleve.St.L.Rev. 211.

"peacekeepers" for the demonstration. Half a dozen firemen from the city's fire department were on duty at the scene.

{¶ 8} Following the march and speeches, the demonstrators attached an effigy of "Chief Wahoo"[3] and an effigy of "Black Sambo" to poles. Bellecourt then poured lighter fluid on the "Chief Wahoo" effigy and set it on fire, which the firemen promptly extinguished. Officers Daniel Nuti and David O'Reilly of the Cleveland Police Department, under the order of Commander David Regetz, arrested Bellecourt, Reyna, and Tchiguka. When Watson proceeded to set the effigy of "Black Sambo" on fire, the fireman also extinguished it and the officers arrested Watson and Teters. These demonstrators were handcuffed and taken to the Cleveland Police Department, where they were held for 24 hours before the police released them. Although they were arrested for the offense of aggravated arson, the city never filed charges against them.

{¶ 9} On April 9, 1999, Bellecourt, Reyna, Watson, Teters, and Tchiguka filed a complaint in the common pleas court against the arresting officers Nuti and O'Reilly, then Police Chief Pollutro, and the city of Cleveland, raising several claims pursuant to Section 1983. The plaintiffs later amended their complaint, adding Commander Regetz as a defendant.

{¶ 10} Nuti and O'Reilly subsequently moved for summary judgment, which the court granted. The city and Pollutro also moved for summary judgment, but the court denied the motion. The court, moreover, granted Regetz's motion for summary judgment on the ground that the statute of limitations had already expired when the plaintiffs sought to add him as a defendant.

{¶ 11} At the trial that followed, the remaining defendants, the city of Cleveland and Pollutro, moved for a directed verdict at the close of all evidence, and the court granted that motion. This appeal followed.

{¶ 12} We address the plaintiffs' third assigned error first, in which they challenge the court's directed verdict in favor of the city.

{¶ 13} Under Civ.R. 50(A)(4), a motion for a directed verdict should be granted when, after construing the evidence most strongly in favor of the party against whom the motion is directed, the reviewing court finds that reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to the nonmoving party.[4]

---

**3.** The effigy was dressed in a Cleveland Indians shirt and decorated with Wahoo on one side of the head and Michael White, then mayor of Cleveland, on the other side.

**4.** *Wagner v. Midwestern Indemn. Co.* (1998), 83 Ohio St.3d 287, 294, 699 N.E.2d 507.

{¶ 14} A motion for directed verdict raises the legal question of whether the plaintiff presented evidence legally sufficient to submit the case to the jury.[5] When ruling on a motion for a directed verdict, the court must not consider the weight of the evidence or the credibility of the witnesses.[6] "[I]f there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied."[7]

{¶ 15} Because the plaintiffs seek relief under Section 1983, our inquiry necessarily begins with a review of that statute, which states:

{¶ 16} "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

{¶ 17} A Section 1983 violation must be predicated on a deprivation of constitutional rights.[8] Therefore, we first determine whether the city deprived the plaintiffs of a constitutional right. The plaintiffs argue that their effigy-burning is "speech" protected by the First Amendment and, therefore, the arrest of them based on that conduct deprived them of their rights guaranteed by the Constitution. The city, however, contends that the police lawfully arrested the plaintiffs, arguing that it had probable cause to arrest these demonstrators based on their conduct, which was the effigy-burning.

{¶ 18} Courts have long recognized that the First Amendment's protection does not end at the spoken or written word.[9] Obviously, not all conduct that is engaged in with an intention to express an idea warrants that protection.[10]

{¶ 19} In *Texas v. Johnson,* the United States Supreme Court considered whether burning of the American flag fell within the ambit of the First Amend-

---

5. Id.

6. *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.* (1998), 81 Ohio St.3d 677, 679, 693 N.E.2d 271.

7. Id.

8. *Bird v. Summit Cty.* (C.A.6, 1984), 730 F.2d 442, citing *Flagg Bros., Inc. v. Brooks* (1978), 436 U.S. 149, 155, 98 S.Ct. 1729, 56 L.Ed.2d 185.

9. *Texas v. Johnson* (1989), 491 U.S. 397, 404, 109 S.Ct. 2533, 105 L.Ed.2d 342.

10. Id., citing *United States v. O'Brien* (1968), 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672.

ment. The court held that the proper inquiry in this context is whether the activity was " 'sufficiently imbued with elements of communication' "[11] to bring the First Amendment into play. The test for determination is "whether an intent to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed it."[12] The *Johnson* court instructed that the analysis of whether a conduct is expressive for First Amendment purposes must be made in the context in which the conduct occurs. The court explained that, under this standard, it had previously recognized as expressive conduct such activities as students wearing armbands to protest American military involvement in Vietnam, a sit-in by blacks in a "whites only" area to protest segregation, and picketing about a wide variety of causes.[13]

{¶ 20} Applying this analysis, the Supreme Court held in *Johnson* that flag burning is sufficiently imbued with elements of communication to implicate the First Amendment.

{¶ 21} The First Amendment analysis in *Johnson*, however, did not end there. Where "speech" and "nonspeech" elements are combined in the same conduct, the court, citing *United States v. O'Brien*,[14] reiterated the rule that a sufficiently important governmental interest in regulating a nonspeech element of conduct can justify incidental limitations on First Amendment freedom.[15] This rule comes into play, however, only when the governmental interest is unrelated to the suppression of free expression.[16] Thus, where "an interest asserted by the State is simply not implicated on the facts before us, we need not ask whether the *O'Brien* test applies."[17]

{¶ 22} In the instant case, we have little difficulty identifying the communicative elements in plaintiffs' conduct of burning an effigy of Chief Wahoo. At trial, the plaintiffs offered testimony that the Cleveland Indians' mascot is seen by many in the Native American community as a discriminatory emblem which

---

**11.** *Johnson* at 404, quoting *Spence v. Washington* (1974), 418 U.S. 405, 409, 94 S.Ct. 2727, 41 L.Ed.2d 842; see, also, *State v. Lessin* (1993), 67 Ohio St.3d 487, 620 N.E.2d 72.

**12.** *Johnson* at 404, 109 S.Ct. 2533, 105 L.Ed.2d 342; see, also, *Lessin*, supra.

**13.** *Johnson* at 404., 109 S.Ct. 2533, 105 L.Ed.2d 342

**14.** Supra, fn. 10.

**15.** *Johnson*, 491 U.S. at 407, 109 S.Ct. 2533, 105 L.Ed.2d 342, citing *O'Brien* at 376, 88 S.Ct. 1673, 20 L.Ed.2d 672.

**16.** *Johnson* at 407, 109 S.Ct. 2533, 105 L.Ed.2d 342, citing *O'Brien* at 377, 88 S.Ct. 1673, 20 L.Ed.2d 672.

**17.** *Johnson* at 407, 109 S.Ct. 2533, 105 L.Ed.2d 342.

parodies and denigrates Native Americans and their culture. Our review of the record, which includes a videotape of the entire event, reflects that the demonstrators marched with signs and made speeches with bullhorns protesting the allegedly racist use of the Chief Wahoo mascot, before proceeding to burn the effigy of Chief Wahoo as a part of their demonstration. Under these circumstances, the demonstrators' intent to convey their perception of the racist use of the Wahoo logo is apparent. Equally obvious is the likelihood of that message being understood by those who viewed this conduct. We therefore conclude that the plaintiffs' burning of the effigies was conduct "sufficiently imbued with the elements of communication" to implicate the First Amendment.[18]

{¶ 23} The city claims to have properly arrested the plaintiffs to enforce its interest in preventing a safety hazard. However, the record shows that the demonstration took place in a paved area cordoned off with metal barricades and surrounded by police officers as well as six fire fighters equipped with fire extinguishers. Moreover, the public was rerouted away from the area.

{¶ 24} Under these circumstances, we do not find the state's asserted interest of preventing a safety hazard implicated on the facts before us. In accordance with *Johnson* and *Lessin*, therefore, we conclude that the officers' arrest of the plaintiffs interfered with their freedom of expression guaranteed by the First Amendment.

{¶ 25} Having determined that the city violated the plaintiffs' constitutional rights, we now address whether the plaintiffs are entitled to relief under Section 1983. The plaintiffs, relying on *Canton v. Harris*,[19] predicate the city's Section 1983 liability on its failure to adequately train its police personnel regarding proper responses to demonstrations involving ritual burnings.

{¶ 26} In *Harris*, the United States Supreme Court held that the inadequacy of police training may serve as a basis for Section 1983 liability, but only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.[20]

{¶ 27} Furthermore, the court in *Harris* explained that evidence of deliberate indifference need not be direct, stating:

{¶ 28} "[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the

---

18. Accord *Lam v. Ngo* (2001), 91 Cal.App.4th 832, 111 Cal.Rptr.2d 582 ("effigies * * * are surely at least as protected a form of a political communication as flag burning").

19. *Canton v. Harris* (1989), 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412.

20. Id. at 388, 109 S.Ct. 1197, 103 L.Ed.2d 412.

inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."[21]

{¶ 29} In applying this standard of liability, the Sixth Circuit Court of Appeals, in *Bills v. Aseltine*,[22] required plaintiffs to produce more than "merely colorable evidence" of a city's failure to train its officers and of its deliberate indifference to the rights of individuals.[23]

{¶ 30} Here, the record indicates the plaintiffs offered evidence to show that the city inadequately trained its police officers and that that inadequacy amounted to deliberate indifference to individuals' constitutional rights.

{¶ 31} In particular, Commander Regetz testified that he was aware of a prior demonstration at Jacobs Field in October 1997 during the World Series, where Bellecourt engaged in a similar effigy-burning activity and was arrested for it. He also testified that he did not receive any training on flag-burning or effigy-burning activities. Robert Schindler, Assistant Chief of the Cleveland Fire Department, who was on duty at the scene of the demonstration, testified that he had received no training on the constitutional issues regarding citizens' exercise of free speech involving the ritual burning of symbols such as flags or effigies. He also testified that he was unaware of any policy or protocol instituted to safeguard these rights or to protect the safety of the spectators in such events.

{¶ 32} As we have determined, the First Amendment as interpreted by the courts sanctions the ritual burning of flags and other similarly symbolic objects. The city of Cleveland, which had a prior experience with effigy-burning in a similar setting, failed, however, to institute any policy safeguarding this exercise of free expression or otherwise train its safety forces for proper responses to a demonstration involving ritual burning. Instead, the city arrested individuals engaging in this protected activity for aggregated arson.[24]

---

**21.**   Id. at 390, 109 S.Ct. 1197, 103 L.Ed.2d 412.

**22.**   *Bills v. Aseltine* (C.A.6, 1992), 958 F.2d 697, 708.

**23.**   Id. at 708.

**24.**   {¶ a} R.C. 2909.02 defines aggravated arson as the following:
   {¶ b} "(A) No person, by means of fire or explosion, shall knowingly do any of the following:
   {¶ c} "(1) Create a substantial risk of serious physical harm to any person other than the offender;
   {¶ d} "(2) Cause physical harm to any occupied structure;
   {¶ e} "(3) Create, through the offer or acceptance of an agreement for hire or other consideration, a substantial risk of physical harm to any occupied structure."

{¶ 33} Our review of the record therefore indicates that the plaintiffs have at a minimum presented evidence upon which reasonable minds might reach different conclusions as to the city's Section 1983 liability based on its alleged failure to adequately train its safety forces, which amounted to deliberate indifference to individuals' rights under the law. In accordance with Civ.R. 50(A)(4), therefore, we conclude that the court erred in directing a verdict in favor of the city.

{¶ 34} Regarding Pollutro, our review of the brief submitted by the appellants indicates they do not challenge the court's directed verdict granted in favor of Pollutro, having presented no claim on appeal regarding this defendant for our review. Accordingly, we affirm the court's judgment in favor of Pollutro.

{¶ 35} In their first and second assignments of error, the plaintiffs challenge, respectively, the court's granting of Regetz's motion for summary judgment and its ruling on the city's motion in limine to exclude testimony regarding the plaintiffs' participation in a prior effigy-burning demonstration.

{¶ 36} The city asserts that because the appellants failed to designate these orders in their notice of appeal, this court is without jurisdiction to review either of these claims.

{¶ 37} Our review of the record indicates that we lack jurisdiction to review the assigned error regarding summary judgment granted in favor of Regetz; the plaintiffs' claim of error regarding the court's ruling on the city's motion in limine, however, as we explain below, is properly before us for review.

{¶ 38} The record shows that the notice of appeal filed in this case designated only the trial court's August 7, 2001 order granting the defendants' motion for a directed verdict. The appellants did not designate or otherwise refer to the order granting summary judgment in favor of Regetz that they now assign as error. This court has interpreted App.R. 3(D) to require an appellant to designate judgments or orders in the notice of appeal.[25] App.R. 3(D) provides:

{¶ 39} "(D) Content of the notice of appeal. The notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken. * * *"

---

25. *Slone v. Bd. of Embalmers & Funeral Directors* (1997), 123 Ohio App.3d 545, 704 N.E.2d 633, citing *Parks v. Baltimore & Ohio RR.* (1991), 77 Ohio App.3d 426, 428, 602 N.E.2d 674; *Schloss v. McGinness* (1984), 16 Ohio App.3d 96, 98, 16 OBR 101, 474 N.E.2d 666; *Cavanaugh v. Sealey* (Jan. 23, 1997), Cuyahoga App. Nos. 69907, 69908 and 69909, 1997 WL 25521; *In re Estate of Borgh* (Jan. 4, 1996), Cuyahoga App. Nos. 68033 and 68145, 1996 WL 4039; *Chotkevys v. Seman* (Sept. 21, 1995), Cuyahoga App. No. 67812, 1995 WL 558871; *McCarthy v. Stop–N–Shop Supermarkets, Inc.* (July 28, 1994), Cuyahoga App. No. 65839, 1994 WL 393696.

{¶ 40} In accordance with this rule, we have consistently declined jurisdiction to review a judgment or order that is not designated in the notice of appeal. Therefore, the plaintiffs' first assigned error relating to the summary judgment granted in favor of Regetz is not properly presented to us for an appellate review.

{¶ 41} Regarding the second assignment of error, which challenges the court's granting of the city's motion in limine to exclude evidence proffered by the plaintiffs, the record reflects that the court heard arguments prior to trial on this motion but did not rule on it. During trial, after hearing additional arguments from the parties, the court orally granted the motion without journalizing any order regarding this motion. Because the court made the ruling as part of the trial, this ruling is subsumed by the court's final judgment in this case for the purposes of App.R. 3(D). Accordingly, our review of this alleged error is permitted by App.R. 3(D).

{¶ 42} The evidence the city sought to exclude in its motion in limine related to the participation in a similar demonstration by two of the plaintiffs at a World Series game on October 23, 1997, outside Jacobs Fields. In that demonstration, these two individuals also burned an effigy and were arrested and charged with misdemeanor offenses including criminal endangering, resisting arrest, aggravated disorderly conduct, and criminal trespass. The trial court in that case subsequently acquitted them of those charges pursuant to Crim.R. 29.

{¶ 43} The record reflects that the court granted the motion in limine because it reasoned that the October 23, 1997 arrests were made under different circumstances. It also noted that the plaintiffs in that case were arrested by police officers who, although wearing the police uniforms, were working off-duty for a private security company on the day of the incident. The court in addition stated that the plaintiffs on that occasion were arrested for different offenses.

{¶ 44} As we have explained in our analysis of the plaintiffs' third assigned error, in order to establish the city's Section 1983 liability based on inadequate training of its police officers, the plaintiffs need to show that the inadequacy amounted to deliberate indifference. Therefore, the city's prosecution of the plaintiffs for a prior identical effigy-burning activity and their subsequent acquittals is probative evidence offered to show that the city, despite its knowledge of the plaintiffs' ritual burning activities, were deliberately indifferent to their rights in failing to adequately train its safety forces for proper responses. Accordingly, we conclude that the court improperly excluded this evidence.[26]

---

26. In its motion in limine, the city also sought to exclude testimony by an assistant city prosecutor regarding his decision not to file charges against those arrested in the instant effigy-burning incident. Our reading of the transcript shows, however, that the court never

{¶ 45} Finally, in connection with the plaintiffs' fourth assignment of error claiming the court's lack of impartiality deprived them of a fair trial, our disposition of this appeal renders moot an analysis of that claim.[27]

{¶ 46} In that assignment of error, the appellants also request, without citing any authority, that we give an instruction upon remand for a transfer of this case to the docket of a different judge. They essentially ask us to disqualify the trial judge.

{¶ 47} In *Howard Gralnick, Inc. v. Turner,*[28] we were confronted with a similar claim and concluded that we lacked subject matter jurisdiction to review a claim of this distinction, after observing:

{¶ 48} "Section 5(C) of Article IV of the Ohio Constitution, reserves to the Chief Justice of the Supreme Court the sole authority to pass upon the disqualification of any judge of the court of common pleas. The Supreme Court has held that a court of appeals is without authority to pass upon disqualification * * *."[29]

{¶ 49} Similarly here, we have no subject matter jurisdiction to address the plaintiffs' request to disqualify the trial judge. This assignment is overruled.

{¶ 50} Accordingly, the judgment is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part
and cause remanded.

DIANE KARPINSKI, J., concurs.

KENNETH A. ROCCO, A.J., concurs and dissents.

KENNETH A. ROCCO, Administrative Judge, concurring and dissenting.

{¶ 51} I must respectfully dissent from the majority's disposition of the second and third assignments of error. In my view, the trial court properly directed the verdict because appellants did not prove that the city of Cleveland's failure to train its police officers was the result of deliberate indifference to appellants' first amendment rights. Therefore, I would affirm the judgment below.

---

ruled on the admissibility of this testimony and therefore this issue is not proper for an appellate review at this time.

27. See App.R. 12(A)(1)(c).

28. (Mar. 25, 1993), Cuyahoga App. No. 62316, 1993 WL 87689.

29. Id., citing *Beer v. Griffith* (1978), 54 Ohio St.2d 440, 8 O.O.3d 438, 377 N.E.2d 775.

{¶ 52} There is little doubt that the burning of the effigy of the Cleveland Indians' mascot, "Chief Wahoo,"[30] was expressive conduct protected by the First Amendment, and that appellants' arrest without probable cause to believe a crime was being committed deprived them of their First Amendment rights. In order to hold the city liable for this deprivation, however, appellants had to prove not only a violation of their constitutional rights, but also that the violation was the result of a custom or policy of the city. *Monell v. Dept. of Social Serv. of New York City* (1978), 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611. Appellants claim that the city's failure to train its police officers in how to handle "ritual burnings" demonstrated the city's deliberate indifference to the First Amendment rights of its citizens, thus proving that the constitutional deprivation was the result of a city policy. *Canton v. Harris* (1989), 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412. In this case, however, failure to train did not show deliberate indifference.

{¶ 53} "Deliberate indifference" is a stringent standard which requires proof that the municipality disregarded a *known or obvious risk*. *Bryan Cty. Bd. of Commrs. v. Brown* (1997), 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626. The Supreme Court has held that there are two ways to demonstrate deliberate indifference through proof of inadequate police training. First, repeated constitutional violations in the past may demonstrate such a need for training that the municipality's failure to provide it shows a conscious disregard for the rights of its citizens. *Canton*, 489 U.S. at 390, 109 S.Ct. 1197, 103 L.Ed.2d 412. Alternatively, if there is an obvious potential for constitutional violations in recurring situations, the city's failure to provide training to avoid that potential can be said to be deliberately indifferent to the need. Id.

{¶ 54} The evidence in this case showed that effigy-burning incidents occurred in the past and that police officers had received no training in how to handle such incidents. These facts alone do not demonstrate that the city was deliberately indifferent to the constitutional rights of its citizens. To satisfy this branch of the *Canton* analysis, there must be evidence that constitutional violations occurred during the prior incidents so that the city knew that training was required. There was no such evidence here.[31]

{¶ 55} Nor was the alternative branch of the *Canton* analysis met. The effigy-burning situation does not present such an obvious potential for violation of

---

**30.** The caricature of Chief Wahoo is at best insensitive, at worst, vile. I am optimistic that a new mascot will be made part of the Indians' effort to rebuild its team, allowing for the retirement of this inappropriate symbol of a bygone era.

**31.** The fact that the charges resulting from the prior incident were dismissed on a Civ.R. 29 motion does not even suggest that a constitutional violation occurred.

constitutional rights that the city's failure to recognize a need for training amounted to deliberate indifference. A high degree of predictability is essential to this branch of the *Canton* analysis: "The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected 'deliberate indifference' to the obvious consequence of the policymaker's choice — namely, a violation of a specific constitutional or statutory right." *Brown,* 520 U.S. at 409, 117 S.Ct. 1382, 137 L.Ed.2d 626. I simply do not see any obvious likelihood that police will violate citizens' First Amendment rights if they are not specially trained in the handling of effigy burnings.

{¶ 56} In my view, appellants did not present any evidence that the city's failure to train its police officers demonstrated a deliberate indifference to the constitutional rights of its citizens. Accordingly, I would affirm the trial court's judgment for the city on appellants' claims.

{¶ 57} I would further hold that the trial court order granting the city's motion in limine and excluding evidence of appellants' prior prosecution is a moot issue. In its cross-examination of appellant Bellecourt, the city opened the door to testimony about the prior prosecution of appellants. As a result, the prior prosecution was thoroughly explored on redirect and recross-examination. Therefore, the purported exclusion of this testimony does not justify retrial.

{¶ 58} I agree with the majority that we should not consider appellants' challenge to the order granting summary judgment to defendant Regetz, but I do not agree that we lack jurisdiction to address this question. The only jurisdictional aspect of the notice of appeal is the timing; the content can be amended within the discretion of the court of appeals and upon such terms as the court deems just. App.R. 3(A) and (E). Nonetheless, appellants did not designate this order in their notice of appeal or in any motion to amend the notice, and thus failed to apprise the defendants that they were appealing from the summary judgment. See App.R. 3(D); *Transamerica Ins. Co. v. Nolan* (1995), 72 Ohio St.3d 320, 324, 649 N.E.2d 1229; *Maritime Mfrs., Inc. v. Hi–Skipper Marina* (1982), 70 Ohio St.2d 257, 436 N.E.2d 1034. This argument involves a different defendant, a different substantive issue, and a different procedural point in the case than the order actually designated in the notice of appeal. Therefore, it would be unfair to allow appellants to argue the issue now.

{¶ 59} Finally, I agree that we lack jurisdiction to disqualify a trial judge and therefore cannot address the issue raised in appellants' fourth assignment of error.

{¶ 60} Accordingly, I concur and dissent.