[Cite as *State v. Green*, 2021-Ohio-1645.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-200068 |
| | | TRIAL NO. B-1802318 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| JONATHAN GREEN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  May 12, 2021

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Mary Stier*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Robinson & Jones Co. L.P.A.* and *Matthew E. Wiseman,* for Defendant-Appellant.

**Zayas, Presiding Judge.**

{¶1} Jonathan Green appeals his convictions of two counts of aggravated trafficking and trafficking in heroin. In his sole assignment of error, Green contends that the trial court erred in not granting his motion to dismiss due to a violation of his due-process rights because the state failed to preserve exculpatory evidence. For the following reasons, we affirm the judgment of the trial court.

## Factual Background

{¶2} Jonathan Green was arrested on April 20, 2018, after a traffic stop initiated by Cincinnati Police Officer Marc Schildmeyer for a failure to use his turn signal. When the police officers searched the car, they found heroin, ecstasy, and marijuana. On May 9, 2018, Green filed a motion for *Brady* material and a discovery request. Green also filed a subpoena for all cruiser and body camera recordings related to the stop that was served on the Cincinnati Police Records Unit on June 20, 2018. Later that month, the state provided all of the recordings via electronic discovery except the MVR from Schildmeyer's vehicle.

{¶3} On February 19, 2019, Green filed a motion to suppress alleging that the officer did not have any reasonable suspicion or probable cause to effectuate the traffic stop. At the hearing on the motion, Schildmeyer explained that once his lights are activated, the MVR will capture the events that occurred 30 seconds prior to activation. He further testified that he waited approximately 45 to 60 seconds to activate his lights after the traffic violation so the violation would not have been recorded by the MVR. The trial court overruled the motion to suppress.

{¶4} Three months later, Green filed a motion to dismiss based on the state's failure to preserve the MVR from Schildmeyer's police cruiser. At the hearing

on the motion, Schildmeyer again testified that the turn-signal violation would not have been captured on the MVR due to the delay between the time of the violation and the activation of the lights. On the day in question, Schildmeyer had tested the MVR and confirmed it was working properly. The video would have been saved on the hard drive which is located in the rear of the cruiser. Once the hard drive is almost full, he would notify his supervisor, and that person would remove the hard drive, replace it with a new one, and upload the video to the system.

{¶5} Only supervisors have a key to access the hard drive. Schildmeyer could not access the video or delete the video. Schildmeyer testified that he did not destroy, erase, or manipulate the MVR, and he did not ask anyone else to do so.

{¶6} Schildmeyer also explained that subpoenas for video would be sent to the records section. To obtain MVR video, the records section would notify a woman named Carrie from special services who then notifies an administrative sergeant. That individual would then make a copy of the video and send it the records section. Someone from the records department would then forward it to the prosecutor.

{¶7} After Schildmeyer's testimony, the state admitted an audit trail of the electronic discovery history. The exhibit showed that the state provided Green's former counsel with body-worn camera video of Officers Schildmeyer, Knapp, and McCrath. The state also provided MVR video, but the MVR from Schildmeyer's cruiser was not included.

{¶8} Green testified on his own behalf. He insisted that he had used his turn signal when he changed lanes.

{¶9} The trial court overruled the motion after finding that Green did not establish that the state acted in bad faith. After the ruling, Green pled no contest to

all of the charges. The court accepted his no-contest pleas and found him guilty of all of the charges.

Law and Analysis

{¶10} In his sole assignment of error, Green argues that the trial court erred in not granting his motion to dismiss because the failure to preserve exculpatory evidence violated his due-process rights. He further contends that state acted in bad faith by failing to preserve the MVR.

{¶11} The state's failure to preserve materially exculpatory evidence violates a defendant's due-process rights under the Fourteenth Amendment to the United States Constitution. *State v. Brewster*, 1st Dist. Hamilton Nos. C-030024 and C-030025, 2004-Ohio-2993, ¶ 41. Evidence is materially exculpatory where the evidence possesses an exculpatory value that is apparent before the evidence is destroyed, and it is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonable means. *Id.* at ¶ 41.

{¶12} Even if the evidence is not exculpatory, the destruction of potentially useful evidence violates a defendant's due-process rights if the state acted in bad faith. *State v. Benson*, 152 Ohio App.3d 693, 2003-Ohio-1944, 788 N.E.2d 693, ¶ 10 (1st Dist.). Bad faith "imports a dishonest purpose, moral obliquity, and conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." *Id.* at ¶ 14.

{¶13} Typically, the defendant bears the burden to prove that the evidence is exculpatory. *Id.* at ¶ 11. But, where the defendant moves to have the evidence preserved, and the state destroys the evidence, the burden shifts to the state to show

the inculpatory value of the evidence. *Id.*, citing *State v. Benton*, 136 Ohio App.3d 801, 805, 737 N.E.2d 1046 (6th Dist.2000). "If the evidence in question is not materially exculpatory, but only potentially useful, the defendant must show bad faith on the part of the state in order to demonstrate a due process violation." *State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1, ¶ 10. When the missing evidence will not be used to establish guilt or innocence of the charges, it is potentially useful and not materially exculpatory. *Id.* at ¶ 13.

{¶14} Here, Green filed a motion for *Brady* material, a discovery request, and a subpoena for all cruiser and body camera recordings related to the stop that was served on the Cincinnati Police Records Unit on June 20, 2018. Consequently, the burden was on the state to establish that the MVR was not exculpatory. Relying on *Geeslin*, the state established that the missing MVR was not materially exculpatory because the missing videotape could not have established Green's innocence of the drug charges. *Id.* Therefore to establish a due-process violation, Green was required to show the state acted in bad faith. *Id.* at ¶ 10.

{¶15} Green failed to present any evidence that the MVR was destroyed in bad faith. Schildmeyer testified that he could not access the hard drive that contained the MVR and was not authorized to upload the hard drive to the system. When the hard drive is almost full, he notifies a supervisor who has a key to access the hard drive. The supervisor removes the hard drive and uploads to the system.

{¶16} Schildmeyer also explained the city's process when a subpoena is issued to the records section. According to Schildmeyer, a woman named Carrie from special services would be notified, and she would contact an administrative sergeant who would make a copy of the MVR and send it the records section.

Someone from the records department would then forward it to the prosecutor. None of the individuals involved with the subpoena process testified at the hearing. Based on this record, we cannot determine when, how, or why the evidence was lost much less conclude that the state acted in bad faith.

**{¶17}** Accordingly, we overrule the assignment of error.

## Conclusion

**{¶18}** Having considered and overruled Green's sole assignment of error, we affirm the judgment of the trial court.

Judgment affirmed.

**BERGERON** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its own entry this date.