[Cite as *State v. Jones*, 2025-Ohio-2337.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240397 |
|  |  | TRIAL NOS. C/24/TRD/593/A/B |
| Plaintiff-Appellee, | : |  |
| vs. | : |  |
| TIRAS JONES, | : | *JUDGMENT ENTRY* |
| Defendant-Appellant. | : |  |

This cause was heard upon the appeal, the record, and the briefs.

The judgments of the trial court are affirmed for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs are taxed under App.R. 24.

The court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 7/2/2025 per order of the court.**

**By:**_____
        **Administrative Judge**

[Cite as *State v. Jones*, 2025-Ohio-2337.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240397 |
| | | TRIAL NOS. C/24/TRD/593/A/B |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N* |
| TIRAS JONES, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: July 2, 2025

*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman*, *Jr.,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters*, Assistant Public Defender, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

{¶1} Tiras Jones appeals his convictions, after entering no-contest pleas, for speeding, a minor misdemeanor, and failure to stop after an accident, a misdemeanor of the first degree. In his sole assignment of error, Jones contends that the trial court erred to Jones's prejudice when it overruled his motion to compel discovery and subsequent motion to dismiss for failure to preserve evidence. For the following reasons, we affirm the judgments of the trial court.

## Factual Background

{¶2} On December 31, 2023, Jones was cited for speeding and failure to stop after an accident. According to the citation, the accident occurred the previous night on West Kemper Road, and the vehicle was located the following day.

{¶3} On January 29, 2024, Jones filed a demand to preserve "[a[ny video or audio recordings made at the scene and time of arrest." At a pretrial on March 19, Jones informed the court that he had requested body-worn-camera ("BWC") video, but he had not yet received it. Jones requested a hearing for a motion to compel.

{¶4} Jones filed a motion to compel discovery alleging that the State failed to produce BWC video of the investigation done at the accident site on West Kemper Road and the citation of Jones, and that the BWC video was necessary to ensure Jones's right to a fair trial and to allow Jones to prepare for trial. Jones asked for reasonable sanctions for the State's failure.

{¶5} At the hearing on the motion, Officer Jason Hogg, an officer with the City of Forest Park, testified that he was dispatched to a hit/skip auto accident following a collision on December 30, 2023, and the victim described the vehicle involved as a black Nissan Rogue. The following day, Hogg took the crash report. Hogg was not asked any additional questions regarding his contact with the victim or

whether he obtained or uploaded any video from the night of the collision.

**{¶6}** Hogg testified that he came into contact with Jones at his home on December 31, 2023, the day after the accident. That morning, Hogg drove around the area, searching for a crashed Nissan Rogue. He noticed a crashed Nissan Rogue at Jones's address and knocked on the door. The defendant's father opened the door and told Hogg that his son was driving the car the previous night, and that his son could tell him about it. Hogg spoke to Jones who admitted that he was in the car, and that he had struck a vehicle and drove away because he was scared. Hogg stated that Jones also had a suspended license. Hogg issued a citation for fleeing the scene.

**{¶7}** Hogg was wearing a BWC that day, which was functional and in working order. Hogg testified that the retention period for BWC video at Forest Park was 30 days. Hogg further explained that

> So if we do not create a case manually, so if we don't have a reason to create a case, we don't. And all the footage is rolled over after 30 days. It automatically deletes. There's nothing we can do.
>
> And if it's anything like we know – you know, like a serious offense like domestics and stuff like that, we will go ahead and create a case for those so they don't destroy. But a lot of traffic stuff people plea out to, so we do not go through and manually create a case.

Hogg testified that the BWC video was uploaded on December 31, 2023, and would have been destroyed on January 29, 2024.

**{¶8}** The cross-examination focused on the date the BWC video would have been destroyed. Hogg testified that the 30-day period started on the day the BWC recorded the video. Hogg explained that he uploaded the BWC video after his shift ended. When Hogg docked his camera, the BWC video uploaded and was deleted 30

days later.  Defense counsel calculated that the BWC video would have been available until January 30, 2024.  Hogg confirmed that January 29, 2024 would have been the 29th day.  When asked if January 26 would have been the 26th day, Hogg responded that he would need to look at a calendar.

**{¶9}**  Hogg confirmed that he did not create a case, and that he cited Jones.  Jones's initial court date was January 9, 2024.  When asked if Jones said he was going to retain counsel at that hearing, Hogg responded that he did not know because he was not present at that hearing.

**{¶10}** Hogg testified that a citation does not create a case in their system, and that a case had to be manually created.  Hogg did not manually create a case despite his knowledge that Jones had been cited for a misdemeanor of the first degree, which carried a penalty of jail time.  Hogg testified that he understood that individuals have a right to counsel and a right to discovery.

**{¶11}**  On redirect, Hogg confirmed that he issued the citation on December 31, 2023, at 12:16 p.m., one day after the offense occurred.  The prosecutor represented that the discovery request was filed on January 29, and Hogg testified that the video would have been destroyed on January 29, 2024.

**{¶12}**  During cross-examination, Hogg testified that the video was uploaded at the end of his shift at 7:00 p.m.  Hogg was again asked about the calculation of the 30 days and became confused.  Hogg explained that the 30-day period would be calculated based on the date and time the video was recorded.  Hogg stated that January 1 at 12:16 p.m. would be one day, January 2 would be two days, and January 3 would be three days, and January 29 would be 29 days.  The demand to preserve the recordings was filed on January 29 at 11:31 a.m.

**{¶13}**  The parties rested, and the court continued the case for oral arguments

and a decision. On the date of oral arguments, defense counsel was unprepared and requested permission to submit written closing arguments. Both parties submitted written arguments.

**{¶14}** Jones argued that his due-process rights were violated by the destruction of the BWC video, and that the video "could have been used to prepare cross-examination and evaluate potential plea deals . . . and contained material evidence and was relevant to the potential punishment that Mr. Jones could face on this charge." Jones further argued that because he filed a demand to preserve the video, the State had the burden to establish the BWC video was solely inculpatory, and regardless of whether the BWC video was destroyed on January 29 or 30, the State destroyed the video after Jones filed his demand.

**{¶15}** Jones further argued that the State failed to meet its burden to show the video was inculpatory. Jones stated that, "Hogg testified that he spoke to someone whose car got hit and to Mr. Jones, both being recorded on his BWC footage." Jones misstates Hogg's testimony. Hogg testified that he was dispatched to the crash scene on December 30, 2023 and spoke with the victim. There was no evidence or testimony to establish whether there was BWC video from Hogg's encounter with the victim on December 30, 2023. The focus during the hearing was solely the video recorded on December 31, 2023 at Jones's home.

**{¶16}** Jones contended that the BWC video may have contained impeachment evidence or exculpatory statements by Jones. Jones asked for the charges to be dismissed as a remedy for the due-process and discovery violations, arguing that he was "heavily prejudiced" because counsel could not effectively prepare a defense where the officer testified that Jones made an admission, the witness interview was not preserved, and he was unable to prepare cross-examination without the BWC video.

6

**{¶17}** The State argued the BWC video was destroyed per the retention policy, and Jones did not establish the exculpatory nature of the video. Hogg located Jones at his home, cited him, and left. At trial, Hogg can testify regarding the encounter at Jones's home and be cross-examined by Jones. The State did not act in bad faith, as the video was automatically destroyed at the end of the retention period. Jones provided no evidence of prejudice as required by *State v. Palmer*, 2023-Ohio-1554 (1st Dist.).

**{¶18}** The State further argued that Jones's demand was filed on the day the BWC video was destroyed, and the State's process to procure the BWC video requires more than one day. The State requested that no sanction be imposed.

**{¶19}** At the hearing set for a decision, Jones acknowledged to the court that Hogg testified the BWC video was destroyed on January 29. The court found that the State would not have had sufficient notice to request the BWC video to ensure its availability because there were only a few hours from the time the demand was filed and the video's destruction. The court denied the motion to compel.

**{¶20}** Jones appealed and argues that the trial court erred to his prejudice when it overruled his motion to compel discovery and subsequent motion to dismiss for failure to preserve evidence.

### Discovery Violation

**{¶21}** "'[W]hen reviewing a trial court's ruling on a motion to dismiss arising from an alleged due-process violation based on destroyed or missing evidence, we defer to the factual findings of the trial court while applying a de novo review of the trial court's application of the facts to the law.'" *State v. Jones*, 2025-Ohio-1098, ¶ 17 (6th Dist.), quoting *State v. Urbanski*, 2023-Ohio-3966, ¶ 16 (6th Dist.), quoting *State v. Walker*, 2022-Ohio-1684, ¶ 33 (10th Dist.).

**{¶22}** A defendant's due-process rights are violated when the State fails to preserve materially exculpatory evidence. *See State v. Sanon*, 2023-Ohio-2742, ¶ 52 (1st Dist.). "Evidence is materially exculpatory where the evidence possesses an exculpatory value that is apparent before the evidence is destroyed, and it is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonable means." *State v. Green*, 2021-Ohio-1645, ¶ 11 (1st Dist.). "[T]he suppression of materially exculpatory evidence violates a defendant's due process rights, regardless of whether the state acted in good or bad faith." *State v. Geeslin*, 2007-Ohio-5239, ¶ 7.

**{¶23}** "Evidence is materially exculpatory 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'" *State v. Jones*, 2025-Ohio-1098, ¶ 19 (6th Dist.), quoting *City of Toledo v. Sanders*, 2023-Ohio-2092, ¶ 26 (6th Dist.), quoting *State v. Johnston*, 39 Ohio St.3d 48, 61 (1988), quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial does not establish 'materiality' in the constitutional sense." (Quotations omitted.) *Id.*, quoting *Toledo v. Zapata*, 2015-Ohio-3946, ¶ 9 (6th Dist.), citing *State v. Jackson*, 57 Ohio St.3d 29, 33 (1991), quoting *United States v. Agurs*, 427 U.S. 97, 109 (1976).

**{¶24}** "The Ohio Supreme Court has held that, if the missing evidence would not 'challenge the substance of the allegations[,]' it 'could not have been materially exculpatory evidence . . . .'" *State v. Franchi*, 2016-Ohio-1195, ¶ 6 (9th Dist.), quoting *Geeslin* at ¶ 13. In *Geeslin*, the Court held that because the missing portion of a videotape would be used "to refute [a state trooper's] stated reasons for stopping" the

8

defendant and not "for the purpose of establishing [his] guilt or innocence[,]" the defendant had to demonstrate that the State acted in bad faith when it lost the tape. *Id.* at ¶ 12, 14. Thus the evidence was not materially exculpatory, but instead, was potentially useful. *Id.* at ¶ 13.

**{¶25}** When the evidence is potentially useful, a defendant cannot establish a due-process violation without first demonstrating the State acted in bad faith. *See State v. Benson*, 2003-Ohio-1944, ¶ 10 (1st Dist.). Ordinarily, the defendant bears the burden to show that the evidence was materially exculpatory. *Id.* at ¶ 11. However, the burden shifts to the State to show the inculpatory value of the evidence when the defendant moves to have the evidence preserved, and the State destroys the evidence. *Id.* Thus, in this case, the burden shifted to the State to demonstrate that the BWC video was not materially exculpatory because Jones filed a demand to preserve the video.

**{¶26}** Jones argues that the State failed to show the BWC video was inculpatory because "Jones disputed the characterization of the incident, and the BWC from the scene and from Officer Hogg's discussion with Mr. Jones was the only objective evidence and a source of impeachment evidence to dispute testimony by the State's witnesses."

**{¶27}** However, Jones did not testify at the hearing or submit an affidavit disputing the events as related by Hogg. Hogg testified that Jones's father told him that Jones was driving the car on the night of the accident. Hogg further testified that Jones admitted to striking a vehicle and driving away because he was scared. Thus, Hogg's testimony as to what occurred during the conversation at Jones's home was undisputed. Based on Hogg's testimony, the BWC video contained inculpatory admissions by Jones, and the trial court found Hogg credible. Accordingly, the State

met its burden to establish the evidence was inculpatory.

{¶28} Moreover, in his closing argument, Jones argued the video "could have been used to prepare cross-examination and evaluate potential plea deals . . . and was relevant to the potential punishment that Mr. Jones could face on this charge." These reasons for the exculpatory nature of the video go beyond challenging the substance of the allegations against him as potentially useful evidence. *See Geeslin*, 2007-Ohio-5239, at ¶ 13. Therefore, the State met its burden to demonstrate that the BWC video was not materially exculpatory. *See id.*

{¶29} Jones further argues that this case is akin to *State v. Anderson*, 2006-Ohio-1568 (1st Dist.). In *Anderson*, the State destroyed a video that "would have provided the only possible objective evidence of the events on the night" and "would have constituted Anderson's only impeachment tool if the police officers testified inaccurately." *Id.* at ¶ 17. The video was important because "Anderson disputed many of the facts at issue--whether anyone observed Anderson for the 20 minutes required, who actually administered the intoxilyzer test, and what was apparent from his gait and demeanor as he walked from the police cruiser, through the sally port, and into the police station." *Id.* The court held that the State failed to meet its burden to show the inculpatory value of the evidence. *Id.* at ¶ 18. *Anderson* is inapposite to this case because the State established that the missing BWC video contained inculpatory admissions by Jones.

{¶30} To the extent that Jones is also challenging the "BWC from the scene," there is no evidence in the record that BWC video from the night of the accident ever existed. On direct examination, Hogg testified that he responded to the scene of the accident, and the victim described the vehicle involved as a black Nissan Rogue. He also testified that he took the crash report the day after the accident. Jones did not

question Hogg about his response to the scene or ask if there were any BWC video from the night of the accident that memorialized the victim's statement. Thus, Jones did not establish that BWC video from the scene existed and was destroyed. Even if Jones demonstrated that video of the scene existed and was destroyed, the BWC video would have been taken after the accident, and after Jones had left the scene. Consequently, the video could not be used "for the purpose of establishing [his] guilt or innocence[.]" *See Geeslin* at ¶ 12.

{¶31} Accordingly, we overrule Jones's sole assignment of error.

## Conclusion

{¶32} Having overruled Jones's sole assignment of error, we affirm the judgments of the trial court.

Judgments affirmed.

**CROUSE** and **BOCK, JJ.,** concur.