[Cite as *State v. Palmer*, 2023-Ohio-1554.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220146 |
| | | TRIAL NO. C-21CRB-15598 |
| Plaintiff-Appellant, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| CHELSEA PALMER, | : | |
| | | |
| Defendant-Appellee. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: May 10, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Paula Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffman*, Assistant Public Defender, for Defendant-Appellee.

**WINKLER, Judge.**

{¶1} The state of Ohio appeals the judgment of the Hamilton County Municipal Court dismissing a criminal complaint that charged defendant Chelsea Palmer with domestic violence. For the following reasons, we reverse the trial court's judgment and remand this cause for further proceedings.

## I.     Background Facts and Procedure

{¶2} On August 30, 2021, defendant-appellee Chelsea Palmer was charged with domestic violence, in violation of R.C. 2919.25(C). On that same date, Woodlawn Police Officer Brandon Wilson filed an affidavit in support of the charge. He indicated that earlier in the day officers had responded to a location on Glendale-Milford Road "for an assault that just occurred" and that "Officers spoke to Paris Hill who advised that the mother of his child, Chelsea Palmer, just assaulted him."

{¶3} Officer Wilson additionally averred that

Mr. Hill said that he was sitting in his vehicle, on break, when he heard someone banging on his rear window. He said he looked back and the person broke the window. He said he got out of his vehicle and observed Ms. Palmer standing at the rear of his vehicle holding a hammer. He said that her sister was also with her.

He said that she went towards him with the hammer and swung the hammer at him, striking him in the right side of the head. He said that her sister began trying to hold him in place and that Ms. Palmer continued to swing the hammer at him but that she did not hit him again with it.

2

He said at one point, Ms. Palmer threw the hammer down and began striking him in the body with closed fists. Mr. Hill said he was able to break away from the two females and that is when they got into a white Ford Edge and fled the scene. He said at that time he called for police assistance.

There were several witnesses that observed the incident. Officer Wilson spoke to one employee who said that he witnessed the female waiving the hammer around and then she fled the scene.

{¶4} Officer Wilson also sought and obtained a temporary protection order for Hill. On September 1, 2021, defense counsel made a demand for discovery and for the preservation of "any recordings relevant to the current case." On November 9, 2021, defense counsel moved to compel production of recordings or to dismiss the complaint with prejudice on the ground that the failure to preserve the evidence was a due-process violation. A series of hearings followed.

{¶5} During this series of hearings, the state advised the court that it had provided Palmer with discovery material including the body-worn camera recording from Sergeant Mondella of the Woodlawn Police Department, who was the first officer to arrive at the scene and speak with Hill, a recording of Hill's 911 call, and Hill's written statement. The state also indicated that there was at least one witness to the altercation, a witness who may have recorded the altercation. The state did not produce any video evidence from Officer Wilson, who arrived on the scene after Sergeant Mondella and had interviewed Hill for about 20 minutes while Hill was treated by paramedics in an ambulance. Sergeant Mondella was not present for the entire interview. Because there was a dispute as to why the state had not produced

3

any body-camera footage from Officer Wilson, Officer Wilson was called to testify at a March 1, 2022 hearing.

{¶6}    At the March 1, 2022 hearing, Officer Wilson indicated that when he interviewed Hill in the ambulance he either did not activate his body-worn camera or he failed to properly save the recording.  However, Officer Wilson could not think of any reason why he would not have turned on his body-worn camera during the interview, and he conceded that if he had made the recording, defense counsel's motion to preserve the evidence was filed well within the police department's retention period for video recordings.

{¶7}    Because the state did not have a video to produce, defense counsel argued that the case should be dismissed for a violation of Palmer's due-process rights. Defense counsel contended that the missing video recording could have contained evidence to impeach Hill and would have been of such a nature that Palmer could not obtain comparable evidence by other reasonably available means.  Subsequently, the trial court dismissed the complaint charging Palmer with domestic violence.  The trial court did not make any finding of bad faith on behalf of the government, consistent with the defense's position that there was no bad faith.[1]

{¶8}    The state has appealed.  Raising one assignment of error for our review, the state alleges that the trial court erred in dismissing the complaint.

---

[1] On January 3, 2023, during a limited remand from this court, the parties stipulated that there had been no bad faith on behalf of the state with respect to the missing video.

## II. Analysis

**{¶9}** A due-process violation occurs when the government fails to preserve materially exculpatory evidence or when it destroys evidence in bad faith that is potentially useful to the defense. *See State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1, ¶ 9, citing *Arizona v. Youngblood*, 488 U.S. 51, 57-58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 74; *State v. Brown*, 1st Dist. Hamilton Nos. C-180236, C-180237, C-180261 and C-180262, 2019-Ohio-1615, ¶ 10.

**{¶10}** Evidence is materially exculpatory if it (1) "possesses 'an exculpatory value that was apparent before the evidence was destroyed' " and (2) is " 'of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.' " *Powell* at ¶ 74, quoting *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). "The possibility that [evidentiary material] could have exculpated [the defendant] if preserved or tested is not enough to satisfy the standard of constitutional materiality." *Youngblood* at 56.

**{¶11}** Materially exculpatory evidence can include evidence that has an exculpatory value solely because of its tendency to impeach the credibility of a government witness. *See United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *see also Strickler v. Greene*, 527 U.S. 263, 280-282, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

**{¶12}** Generally, the defendant bears the burden to show that the evidence was materially exculpatory. *Powell* at ¶ 74; *Brown*, 1st Dist. Hamilton Nos. C-180236, C-180237, C-180261 and C-180262, 2019-Ohio-1615, at ¶ 12. However, in this appellate

district and several other appellate districts in Ohio the burden shifts to the state under certain circumstances. *See Brown* at ¶ 12.

{**¶13**} The burden shifts to the state to show the evidence was "solely inculpatory" if the defendant requests preservation of the evidence and the state subsequently fails to preserve it. *See State v. Anderson*, 1st Dist. Hamilton No. C-050382, 2006-Ohio-1568, ¶ 11, citing *State v. Benson*, 152 Ohio App.3d 495, 2003-Ohio-1944, 788 N.E.2d 693, ¶ 10 (1st Dist.); *State v. Benton*, 136 Ohio App.3d 801, 737 N.E.2d 1046 (6th Dist.2000); *Columbus v. Forest*, 36 Ohio App.3d 169, 522 N.E.2d 52 (10th Dist.1987); *compare State v. Beavers*, 2012-Ohio-6222, 986 N.E.2d 516 (2d Dist.) (Rejecting burden shifting on the grounds that it is contrary to United States and Ohio Supreme Court jurisprudence reaffirming that the defendant has the burden to establish a due-process violation even when the defendant had requested that evidence be preserved prior to its destruction.).

{**¶14**} We read the trial court's decision in this case as necessarily finding that Officer Wilson recorded the interview with Hill on his body-worn camera and that without any bad faith the recording was not preserved. Thus, the trial court granted Palmer's motion to dismiss on the ground that the state failed to preserve materially exculpatory evidence.

{**¶15**} We review the trial court's finding of this due-process violation de novo. In doing so, we are mindful that under this district's precedent, the burden shifted to the state to demonstrate that the missing video recording from Officer Wilson was not materially exculpatory because defense counsel made a specific, timely request to preserve all video recordings by investigating officers. *See Anderson*, 1st Dist. Hamilton No. C-050382, 2006-Ohio-1568, at ¶ 13.

6

{¶16} Upon our de novo review, we conclude that the state met its burden to demonstrate that the missing video evidence was not materially exculpatory. The record from the proceedings below demonstrates that the chances were extremely low that Wilson's interview of Hill in the ambulance, if properly retained, would have helped the defense. Palmer surmises that the recording may have captured Hill admitting that he made up the allegation against her or it may have shown that Hill had no injuries. However, Officer Wilson testified that his investigation led him to charge Palmer with domestic violence and that he interviewed Hill until Hill was cleared by paramedics. And, although not expressly cited by the state at the hearing, the affidavit Officer Wilson filed in support of the complaint details what Hill told him in support of the charge, including that Palmer had hit him in the head with a hammer and she had continued to assault him as Palmer's sister restrained him.

{¶17} Additionally, the unpreserved evidence was not of such a nature that Palmer would be unable to obtain comparable evidence by other reasonable means. For instance, the record shows that the state had provided Palmer with the recording from Sergeant Mondella's body-worn camera of that officer's interactions with Hill on the scene. Moreover, there is no suggestion that Hill, the officers, or the paramedics who assisted Hill were unavailable to be cross-examined on Hill's statements or injuries.

{¶18} Finally, this is not a case where a missing video could have contained evidence of the defendant's actions leading up to a criminal charge. *Compare Anderson*, 1st Dist. Hamilton No. C-050382, 2006-Ohio-1568, at ¶ 17 (dismissal proper where the missing police videotape of OVI investigation would have provided the only objective evidence of the events leading up to the OVI arrest). In fact, as the

7

state points out, the record shows that there was a witness to the altercation and possibly a video recording taken by that witness. That evidence could be used to challenge Hill's version of events.

{¶19} Based on this record, it is only reasonable to conclude that the unpreserved recording of Wilson's interview had no exculpatory value that was evident before it was destroyed, and the recording was not of such a nature that Hill would be unable to obtain comparable evidence by other reasonably available means. *See Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, at ¶ 74.

### III.  Conclusion

{¶20} The record demonstrates that Palmer's due-process rights were not violated where the state, without bad faith, failed to preserve a video interview of Hill that would not have contributed in any appreciable way to Palmer's defense against the domestic-violence charge and, thus, was not materially exculpatory. Consequently, we conclude the trial court erred by dismissing the complaint based on a due-process violation. Accordingly, we sustain the assignment of error, reverse the trial court's judgment, and remand the cause for further proceedings.

Judgment reversed and cause remanded.

**CROUSE, P.J.,** and **BOCK, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.