[Cite as *State v. Sanders*, 2023-Ohio-2092.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

City of Toledo                                        Court of Appeals No.  L-21-1260

      Appellee                                    Trial Court No.  TRC-20-02916

v.

Marouise L. Sanders                          **DECISION AND JUDGMENT**

      Appellant                                   Decided:    June 23, 2023

* * * * *

Rebecca Facey, City of Toledo Chief Prosecuting Attorney, and
Jimmie L. Jones, Assistant Prosecuting Attorney, for appellee.

Autumn D. Adams, for appellant.

* * * * *

**ZMUDA, J.**

## I.  Introduction

**{¶ 1}** Appellant, Marouise Sanders, appeals the judgment of the Toledo Municipal Court, sentencing her to 30 days in jail and two years of probation after she was found guilty of one count of operating a motor vehicle under the influence of alcohol and/or drugs (hereinafter "OVI").  For the reasons that follow, we find no error in the trial court's denial of appellant's pretrial motion to suppress, and we therefore affirm.

## A. Facts and Procedural Background

{¶ 2} On February 20, 2020, a complaint was filed charging appellant with one count each of OVI in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree, driving under suspension in violation of R.C. 4510.111, an unclassified misdemeanor, and open container in violation of R.C. 4301.62, a minor misdemeanor. The charges arose after law enforcement officers found appellant asleep and apparently intoxicated in the driver's seat of a vehicle that was disabled along the side of the road.

{¶ 3} Appellant pled not guilty to the aforementioned offenses, and the matter proceeded through pretrial discovery and motion practice. On December 21, 2020, appellant filed his request for discovery and motion to preserve evidence. On January 14, 2021, the state responded to appellant's discovery request and informed him that a discovery packet was available for retrieval at the prosecutor's office.

{¶ 4} Three months later, on April 12, 2021, appellant filed a motion to suppress seeking the suppression of "any and all testimony of the arresting officers * * * due to the state's failure to preserve evidence that is material to guilt or innocence." In his motion, appellant recognized that the state had responded to his discovery request by providing discovery in the form of police reports, but failed to provide any bodycam or dash cam footage of appellant's arrest. According to his motion, bodycam and dashcam video footage of appellant's arrest was recorded, but the state acknowledged that the footage "does not exist as a result of the Toledo Police Department migrating their video to a

2.

cloud system." As such, appellant insisted that he was entitled to suppression of any testimony from the arresting officers.[1]

{¶ 5} The matter proceeded to a hearing on appellant's motion to suppress on June 24, 2021.[2] At the outset of the hearing, the parties stipulated that arresting officer's, Heather Smith, bodycam footage was deleted following a data migration procedure in October 2020, two months prior to appellant's discovery request. Additionally, the trial court found that appellant had the burden of demonstrating that the evidence was materially exculpatory because the discovery request occurred after the evidence was lost.

{¶ 6} In response, appellant's counsel explained to the court that its delay in requesting discovery was attributable to the fact that appellant "went bench warrant for a while." Counsel went on to insist that the discovery request was filed as soon as the public defender's officer was appointed to the case, and maintained that "we did it as soon as we could as far as from our point of view. So I'd offer that to the Court if that would change the Court's mind." The court was not persuaded to change its ruling based upon counsel's remarks.

---

[1] In this appeal, appellant's challenge to the trial court's denial of his motion to suppress is based entirely upon the lost bodycam footage. Appellant raises no argument concerning any dashcam footage that was lost as a consequence of the October 2020 data migration malfunction.

[2] The state did not file a written memorandum in opposition to appellant's motion to suppress.

3.

{¶ 7} Thereafter, appellant called his first witness, sergeant Alanna Pepitone of the Toledo Police Department. As the officer in control of the Toledo Police Department's Court Liaison Unit, Pepitone is responsible for handling subpoenas and managing discovery.

{¶ 8} Specific to this case, Pepitone testified that there were three videos containing bodycam footage of appellant's February 20, 2020 arrest on the police department's G-Tech cloud-based storage system. Pepitone stated that the video footage, which was taken from Smith, was no longer available in the saved files. Upon attempting to view the footage, Pepitone observed only "a black screen, it has the white word G-Tech written across it. Below it it (sic) has arrest evidence, I believe it's in blue, underneath it. And that's it." Pepitone confirmed that the black screen with white lettering meant that the video evidence was originally saved but later "permanently deleted."

{¶ 9} Pepitone had no personal knowledge as to how the footage was deleted, but she testified that one of the computer technology officers informed her that "there was an issue with the – there was a breakdown in one of the, like, a tower. * * * And while it was being transferred from a server up to the Cloud, during that process there was an error and it was lost." Pepitone went on to explain that the scope of the data loss was "vast" and encompassed more video evidence than merely that which is at issue in this case.

{¶ 10} When asked about the Toledo Police Department's procedure for preserving bodycam footage, Pepitone explained that officers have the option of

4.

categorizing their bodycam footage as either arrest evidence, traffic stop evidence, or transport evidence. According to Pepitone, "different categorizations have different retention levels." Specifically, the Toledo Police Department retains arrest evidence for a period of three years. Pepitone confirmed that Smith properly categorized the bodycam footage at issue as arrest evidence.

{¶ 11} As his next witness at the suppression hearing, appellant called Smith. Smith testified that on the evening of February 20, 2020, she and her partner, Ashley Reneau, were returning to the Toledo Safety Building at the end of their shift when they noticed a disabled vehicle resting upon a curb in the roundabout at the intersection of Cherry Street and Manhattan Boulevard. According to Smith, there was damage to the front wheel on the passenger side of the vehicle. Smith and Reneau stopped their cruiser and approached appellant's vehicle. A tow truck driver also approached appellant's vehicle immediately after Smith and Reneau arrived. It is unclear from the record who summoned the tow truck to tow appellant's vehicle.

{¶ 12} As Smith approached the vehicle to investigate, she noticed that "there was an open container of alcohol underneath the vehicle kind of spilt." She testified that as she peered inside the vehicle, she found appellant "passed out sleeping behind the wheel of the vehicle with the engine running." Thereafter, a second unit comprised of officers Nick Linthicum and Dillan Young arrived on the scene to assist.

{¶ 13} Smith proceeded to knock on the door to try to awaken appellant, but he did not respond. Thereafter, Smith opened the unlocked driver's door, handcuffed

5.

appellant, turned off the vehicle's ignition, and attempted to wake appellant from his sleep by rubbing his sternum. After appellant woke up, Smith detained him in her cruiser. Smith searched appellant's vehicle and discovered another alcoholic beverage in a plastic bag on the floor in the back of appellant's vehicle. Ultimately, appellant was arrested and his vehicle was impounded. Smith testified that no field sobriety testing was conducted out of safety concerns, and appellant refused to submit to a breath test upon arrival at the police station.

{¶ 14} During her testimony, Smith confirmed that she recorded the entire incident on her body camera and proceeded to save the footage as arrest evidence. She stated that she uploaded the bodycam footage to the Toledo Police Department's database "either that night or the next day." Smith could not confirm whether the other officers on the scene at the time also recorded the incident. Moreover, Smith testified that she never watched the bodycam recording and was thus unaware whether the recording depicted anything of value in this case.

{¶ 15} Following Smith's testimony, appellant called Reneau as his final witness. Reneau reiterated Smith's testimony as to how she came into contact with appellant on February 20, 2020. She stated that she recorded her encounter with appellant on her body camera, but she acknowledged that she "forgot to categorize it." According to Reneau, when an officer fails to categorize bodycam footage, the footage is saved "under a test." Reneau was unaware of how long such footage is stored in the Toledo Police

6.

Department's database, but she indicated that her bodycam footage of the February 20, 2020 encounter with appellant was deleted because it was categorized as a test.

{¶ 16} At the close of Reneau's testimony, the matter proceeded to closing arguments with no witnesses called by the state. For his part, appellant noted that Smith's bodycam footage was not kept for three years as required under the Toledo Police Department's evidence retention policy. Further, appellant referred to Reneau's testimony that her bodycam footage was deleted based upon her failure to categorize it in a manner that would ensure its preservation as evidence. As a consequence of the loss of this evidence, appellant argued that he was "deprived of exculpatory material. This was the entire stop. * * * Body cam does not have a motive, it does not have a bias. It just tells you exactly what's here, and in order – that makes it a very unique piece of evidence that we can't get any other way."

{¶ 17} In response, the state argued that appellant had not met his burden of demonstrating that the lost bodycam footage contained materially exculpatory evidence. Indeed, the state asserted that appellant could not establish that the video contained exculpatory material since nobody viewed the video footage prior to its deletion. Additionally, the state argued that appellant failed to demonstrate that the loss of the bodycam footage was attributable to bad faith on the part of anyone involved in the collection and retention of the evidence.

{¶ 18} Upon consideration of the parties' arguments and the evidence presented at the hearing, the trial court determined that appellant failed to meet his burden to show

7.

that the bodycam footage contained materially exculpatory evidence not able to be obtained by any other means. In support, the court referenced the remaining evidence available to appellant, including the physical evidence recovered from the scene (the impounded vehicle, the tow truck paperwork, and the alcoholic beverages that were recovered from outside and inside the vehicle) and the testimony of the officers and the tow truck driver who arrived on the scene during the encounter. Consequently, the trial court denied appellant's motion to suppress.

{¶ 19} Thereafter, the matter proceeded to a bench trial on July 8, 2021. During the trial, Smith and Reneau each testified as to several indicators of appellant's intoxication. They indicated that there were alcohol containers inside and outside of appellant's vehicle and appellant was visibly impaired. Specifically, the officers testified that they detected a strong odor of alcohol emanating from appellant after waking him up and removing him from the cruiser and appellant was unsteady on his feet, slurring his speech, and behaving in a belligerent fashion.

{¶ 20} At the conclusion of the trial, the trial court found appellant guilty of OVI, but rendered a directed verdict in appellant's favor as to the remaining charges of driving under suspension and open container. The court ordered the preparation of a presentence investigation report and continued the matter for sentencing.

{¶ 21} Appellant's sentencing hearing was held on July 29, 2021. After receiving statements in mitigation, the court sentence appellant to 365 days in jail, with all but 30

8.

days suspended, and placed appellant on probation for a period of two years. Appellant's timely notice of appeal followed.

## B. Assignments of Error

{¶ 22} On appeal, appellant assigns the following errors for our review:

1. The failure of the Trial Court to suppress the officers' statements after the City failed to preserve materially exculpatory evidence violated Sanders' Due Process rights under the Fourteenth Amendment.

2. The weight of the evidence did not support a conviction for OVI.

## II. Analysis

## A. Suppression Issue

{¶ 23} In his first assignment of error, appellant argues that the trial court's failure to suppress the arresting officers' testimony at trial after the state lost the officers' bodycam video footage of the arrest violated his due process rights.

{¶ 24} Our review of the trial court's denial of appellant's motion to suppress "presents a mixed question of law and fact." *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶ 40, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. We must accept the trial court's factual findings if they are supported by competent credible evidence, and "independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Wesson* at ¶ 40, quoting *Burnside* at ¶ 8.

9.

**{¶ 25}** Appellant's motion to suppress in this case stems from the state's loss of bodycam video footage depicting his arrest. "The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects an accused from being convicted of a crime when the [s]tate either fails to preserve materially exculpatory evidence or destroys, in bad faith, potentially useful evidence." *State v. Nastick*, 2017-Ohio-5626, 94 N.E.3d 139, ¶ 8 (9th Dist.), citing *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). "Specific tests are applied to determine whether the state's failure to preserve evidence rises to the level of a due process violation. The test depends on whether the lost or destroyed evidence involves 'material exculpatory evidence' or 'potentially useful evidence.'" *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 73.

**{¶ 26}** "Evidence is constitutionally material when it possesses 'an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *Id.* at ¶ 74, quoting *Trombetta* at 489. Evidence is materially exculpatory "'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'" *State v. Johnston*, 39 Ohio St.3d 48, 61, 529 N.E.2d 898 (1988), quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). "The

10.

mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." (Quotations omitted.) *Toledo v. Zapata*, 6th Dist. Lucas No. L-14-1181, 2015-Ohio-3946, ¶ 9, citing *State v. Jackson*, 57 Ohio St.3d 29, 33, 565 N.E.2d 549 (1991), quoting *United States v. Agurs*, 427 U.S. 97, 109, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). When the state fails to preserve material exculpatory evidence, it per se violates a defendant's right to due process. *Powell* at ¶ 74, citing *Trombetta* at 489.

{¶ 27} By contrast, evidence is potentially useful if "no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood* at 57. Where the state's failure to preserve concerns potentially useful evidence, a due process violation will only be found where the defendant demonstrates that the state acted in bad faith. *State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1, ¶ 10. "Bad faith generally requires something more than bad judgment or negligence; it requires dishonesty, conscious wrongdoing, ulterior motive, or ill will." *State v. Daoust*, 6th Dist. Lucas No. L-21-1055, 2021-Ohio-4400, ¶ 33, citing *Powell* at ¶ 81.

{¶ 28} In his appellate brief, appellant only asserts that the bodycam footage from Smith and Reneau was material exculpatory evidence. Appellant does not claim that the evidence was potentially useful, and he advances no argument as to the issue of bad faith on the part of the state. Thus, the issue of bad faith is not before us in this appeal, and the

11.

success of appellant's first assignment of error hinges upon whether the bodycam footage is, as he claims, material exculpatory evidence.

{¶ 29} Before advancing his argument that the bodycam footage was material exculpatory evidence, appellant first argues that the trial court abused its discretion in holding that it was his burden to prove that the evidence was materially exculpatory.

{¶ 30} Ordinarily, a defendant bears the burden of demonstrating that the lost evidence was materially exculpatory or, in the case of potentially useful evidence, that the state acted in bad faith. *Id.* at ¶ 35, citing *Powell* at ¶ 74, 77. However, a narrow exception to this rule applies where a defendant makes a specific request to have the evidence preserved, and the evidence is lost or destroyed after the prosecution is put on notice of the defendant's request. *Id.* In that case, the burden shifts to the state to show that the evidence was not materially exculpatory. *Id.*, citing *State v. Benton*, 136 Ohio App.3d 801, 805, 737 N.E.2d 1046 (6th Dist.2000).

{¶ 31} In *Daoust*, we examined the applicability of this narrow exception under procedural circumstances that were strikingly similar to those involved in the present case. Indeed, the state's loss of evidence in that case stemmed from the same technological issue that caused the loss of Smith's bodycam footage in this case, namely the October 2020 malfunction that occurred when the Toledo Police Department was migrating its data to the G-Tech storage system. *Id*. at ¶ 36. Daoust, like appellant, filed a motion for preserve evidence in December 2020. *Id.* Because his motion to preserve

12.

evidence was filed *after* the state lost the evidence, we held that "the burden of proving that the video was exculpatory remained with Daoust." *Id.*

{¶ 32} Applying *Daoust* to the case sub judice, we conclude that the trial court properly determined that appellant bears the burden of showing that the lost bodycam evidence was materially exculpatory. Appellant insists that *Daoust* is distinguishable because "one officer in [this] case negligently failed to label the footage." Appellant's focus on the manner in which the evidence was lost is misguided as it concerns the application of the burden-shifting exception recognized in *Daoust*.

{¶ 33} The applicability of the burden-shifting exception is a question of timing, not culpability. That is, the inquiry is whether the evidence was lost or destroyed (regardless of the circumstances) *before* or *after* the defendant moves to have the evidence preserved. If the loss or destruction takes place prior to the defendant's motion, the exception does not apply and the burden does not shift from the defendant to the state.

{¶ 34} Just like in *Daoust*, appellant failed to establish that he filed his motion to preserve evidence prior to the loss of the bodycam evidence. At the suppression hearing in this case, there was no dispute that Smith's bodycam footage was destroyed in October 2022. Indeed, the parties stipulated to that fact at the outset of the hearing. There was no evidence to establish precisely how long Reneau's evidence was stored before it was automatically deleted after being improperly categorized as "test" evidence. However, appellant bears the burden of establishing that he requested preservation of the evidence prior to its destruction. Having failed to introduced any evidence to show that he filed his

13.

motion to preserve evidence before Reneau's bodycam footage was deleted, and given the undisputed fact that appellant filed his motion to preserve evidence two months after Smith's bodycam footage was lost, we find that the burden of demonstrating that the evidence is materially exculpatory remained with appellant, and the trial court did not err in so concluding.

{¶ 35} Next, appellant argues that the bodycam footage was material exculpatory evidence, because it constituted unique evidence that was unobtainable by any other means. In support, appellant cites *Benton*, *supra*, 136 Ohio App.3d 801, 805, 737 N.E.2d 1046 (6th Dist.2000).

{¶ 36} In *Benton*, we examined whether destroyed video and audio footage of an OVI-related traffic stop constituted material exculpatory evidence. At the outset of our analysis, we determined that the burden-shifting exception was applicable and thus the state, not Benton, had the burden of demonstrating that the destroyed evidence was not materially exculpatory. *Id.* at 806. We then went on to evaluate the evidence, stating:

> Given the record in this case, it is equally possible that the tape would have
> been exculpatory as inculpatory. We also hold that the evidence is unique
> and not obtainable by other means. Because appellant testified that he
> disputes much of the testimony that the officer gave at the suppression
> hearing, the tape would have provided the only possible objective evidence
> of the events as they happened on the night that appellant was stopped.

*Id.*

14.

{¶ 37} Ultimately, we held that the state failed to meet its burden of demonstrating that the destroyed evidence was not materially exculpatory. *Id.* As a consequence, we found that Benton's due process rights were violated when the state destroyed the evidence. *Id.*

{¶ 38} As we stated above, appellant bears the burden of demonstrating that the bodycam footage at issue in this case was material exculpatory evidence. This is an important point of distinction from *Benton*, where we held that it was the state's burden to show that the evidence was not materially exculpatory. We did not make a definitive statement in *Benton* as to whether the destroyed audio/video evidence was materially exculpatory. Rather, we held that the state failed to meet its burden of showing that the evidence was not materially exculpatory. Given the fact that the state had the burden in *Benton*, and given our reliance upon that fact in reaching our ultimate conclusion as to the due process issue, we find *Benton* distinguishable.

{¶ 39} Nonetheless, *Benton* is useful in this case to some extent, albeit not in a manner favorable to appellant's argument. As was true of the destroyed evidence in *Benton*, the bodycam footage in this case could have exculpated appellant, but it also could have inculpated him. One potentiality is not more likely than the other, especially where, as here, the record demonstrates that nobody viewed the bodycam footage prior to deletion. *See State v. Fox*, 2012-Ohio-4805, 985 N.E.2d 532, ¶ 38 (4th Dist.) ("If no one has reviewed the videotape, a defendant will generally be unable to show that the missing footage contained materially exculpatory evidence.") Therefore, we have no way of

15.

knowing what the footage depicts, and "the possibility that evidence could have exculpated the defendant if preserved or tested is not enough to satisfy the standard of constitutional materiality." *State v. Spencer*, 8th Dist. Cuyahoga No. 106881, 2018-Ohio-5351, ¶ 34, citing *State v. Durham*, 8th Dist. Cuyahoga No. 92681, 2010-Ohio-1416, ¶ 12.

{¶ 40} Furthermore, Smith and Reneau's testimony was the only testimony offered by either party to establish the facts of the traffic stop in this case. The officers testified consistently with one another and their testimony contained no exculpatory material.

{¶ 41} In light of the record before us, we find appellant's claim that the evidence was exculpatory is purely speculative and inconsistent with the evidence that was introduced through the largely undisputed testimony of Smith and Reneau. Therefore, appellant has not met his burden of demonstrating that the bodycam footage was material exculpatory evidence. *See Durham* at ¶ 21 ("In the present case, no one viewed the videotape before it was erased; therefore, Durham cannot show that the evidence was materially exculpatory. The tape may have supported Durham's version of events at the jail, but like Durham, we are left with the inability to say that the videotape would show a clear set of facts that would either support a full dismissal or a limitation on the testimony surrounding the events."); *State v. Arnett*, 2d Dist. Miami No. 2018-CA-3, 2018-Ohio-4227, ¶ 20 (rejecting the defendant's claim that missing portion of a video recording was materially exculpatory, "because there was no evidence of what the video showed");

*State v. McClain*, 2016-Ohio-838, 60 N.E.3d 783, ¶ 42 (2d Dist.) (concluding that the record did not support a conclusion that a missing traffic stop video was materially exculpatory where the only evidence in the record came from a police officer's testimony as to the defendant's apparent intoxication and there was no evidence to suggest the video would contradict that testimony).

**{¶ 42}** Accordingly, appellant's first assignment of error is not well-taken.

### B. Manifest Weight of the Evidence

**{¶ 43}** In his second assignment of error, appellant argues that his OVI conviction was against the manifest weight of the evidence.

**{¶ 44}** When reviewing a manifest weight claim, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). That is, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. *Id.* Our role is to determine "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* We reverse a conviction on manifest weight grounds for only the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.* at 387.

Here, appellant acknowledges that the state provided evidence of appellant's unusual driving (being found in a running vehicle in a roundabout), being unconscious in a running vehicle, grogginess, confusion, odor of alcoholic beverages, slurred speech, watery glassy eyes, unsteadiness in gait and on

his feet, evidence of empty beer cans, his anger at being arrested, falling off [a] bench, [and] falling asleep in the police station.

{¶ 45} Nonetheless, appellant contends that the trial court's determination of guilt on his OVI offense was against the manifest weight of the evidence because it "ignored the officers' admissions that they were concerned Sanders suffered a medical emergency/condition and they failed to have him checked out."

{¶ 46} At trial, Smith and Reneau provided testimony consistent with their suppression hearing testimony. Specifically, they each testified that they (1) approached appellant's vehicle, (2) noticed that the vehicle was running and appellant was asleep at the wheel, (3) observed alcohol outside the vehicle and inside the passenger compartment, and (4) detected a strong odor of alcohol emanating from appellant after waking him up and removing him from the cruiser, and (5) observed that appellant was unsteady on his feet, slurring his speech, and behaving in a belligerent fashion.

{¶ 47} This evidence, taken together, supports the trial court's determination of appellant's guilt as to OVI. Moreover, the officers explained at trial that they were initially concerned about a medical emergency when they approached the vehicle and found appellant slumped over behind the wheel with the vehicle running. However, the officers' concerns were alleviated once they woke appellant up, spoke with him, and observed all of the foregoing indicators of intoxication. Given this testimony, we find no merit to appellant's medical emergency argument.

18.

**{¶ 48}** Having reviewed the record in its entirety, we find that this is not the exceptional case in which the evidence weighs heavily against appellant's conviction. Accordingly, we find appellant's second assignment of error not well-taken.

### III. Conclusion

**{¶ 49}** In light of the foregoing, the judgment of the Toledo Municipal Court is affirmed. The costs of this appeal are assessed to appellant under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Gene A. Zmuda, J.                              _____
                                                        JUDGE

Myron C. Duhart, P.J.

                                             _____
Charles E. Sulek, J.                                    JUDGE
CONCUR.

                                             _____
                                                        JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.