[Cite as *State v. Jones*, 2025-Ohio-1098.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

State of Ohio                                                  Court of Appeals No.  OT-24-026

    Appellant                                          Trial Court No.  22 CR 208

v.

Chad Jones                                               **DECISION AND JUDGMENT**

    Appellee                                           Decided:  March 28, 2025

\* \* \* \* \*

James J. VanEerten, Ottawa County Prosecuting Attorney, and
Thomas A. Matuszak, Assistant Prosecuting Attorney, for appellee.

Jonathan M. McGookey, for appellant.

\* \* \* \* \*

**DUHART, J.**

{¶ 1} Appellant, the State of Ohio, appeals from a judgment of the Ottawa County

Court of Common Pleas granting appellee Chad Jones's Motion to Dismiss for Discovery

Violations. For the reasons that follow, the trial court's judgment is affirmed.

## Statement of the Case and Facts

{¶ 2} On March 3, 2022, appellee Jones was driving in Catawba, Ohio, when he broadsided another vehicle that had run a stop sign, killing its driver. Jones was subsequently charged with a misdemeanor OVI in Ottawa County Municipal Court case No. TRC2200682A.

{¶ 3} On March 7, attorney Michael D. Kaufman filed a request for discovery in case No. TRC2200682A. Included in Kaufman's request was a request for production of "[a]ny relevant written or recorded statements made by the Accused, or any written summaries of any oral arguments, or copies thereof, including but not limited to *any audio or video tape of the traffic stop* that are either in the possession of the State or which the State intends on introducing or utilizing at trial." (Emphasis in original.)

{¶ 4} On March 8, 2022, the State filed a motion to dismiss case No. TRC2200682A, without prejudice, for further investigation. And on March 9, 2022, the Ottawa County Municipal Court dismissed case No. TRC2200682A without prejudice.

{¶ 5} Nearly seven months later, on October 6, 2022, the Ottawa County grand jury returned a true bill indictment in the present case, charging Jones with five offenses, including: aggravated vehicular homicide, a felony of the second degree (as the proximate result of driving while under the influence of alcohol, a drug of abuse, or a combination of them); aggravated vehicular homicide, a felony of the third degree (recklessness); operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them, a misdemeanor of the first degree; violation of speed limits, a

2.

minor misdemeanor; and operating in willful and wanton disregard of the safety of persons or property, a minor misdemeanor.

{¶ 6} On October 18, 2022, Jones's new counsel, attorney Jonathan M. McGookey, served the State with a request for discovery and a request to preserve exculpatory evidence, wherein McGookey requested that the State "preserve any and all videotaped evidence from any source, including but not limited to: private video from area businesses, body cam, cruiser video and/or, station house booking video."

{¶ 7} On March 27, 2023, Jones filed a motion to dismiss for discovery violations together with a request for a hearing. In his motion, Jones argued that the charges against him should be dismissed for a due process violation because the Ohio State Highway Patrol had failed to preserve three dash-cam videos from the three troopers who had responded to the scene of the crash. The parties do not dispute that the Ohio State Highway Patrol dash cam evidence went missing *after* it was specifically requested by Jones's original defense counsel.

{¶ 8} On October 9, 2023, the parties signed and filed joint stipulations regarding the motion to dismiss. Also on October 9, 2023, the Court admitted a flash drive containing videos, including body-cam video from Ottawa County Sheriff Deputy Rob Dotson, body-cam videos from Ottawa County Sheriff Deputy Jonah Boyer, dash-cam video of Sergeant Jim Stewart of the Catawba Island Police Department, and video from a private surveillance camera that captured the crash.

3.

{¶ 9} At the outset of the December 11, 2023 evidentiary hearing on the motion to dismiss, the State acknowledged that the burden of proof was on the state. The State presented testimony by Ohio State Highway Patrol Troopers Tashawna Berry, Carl Gutman, and Ray Zavala, and admitted into evidence three diagrams showing the positions of the patrol cars at the scene.

{¶ 10} On May 8, 2024, the trial court issued a decision and judgment entry granting Jones's motion to dismiss. The following were among the trial court's (undisputed) findings of fact:

> On March 3, 2022, the Defendant's vehicle, which the Defendant was driving at the time, was involved in a crash with another vehicle being driven by [the victim] at the intersection of TR-243 (Beach Club Road) and CR-30 (Northwest Catawba Road) in Catawba Township, Ottawa County, Ohio. [The victim] died as a result of the crash.
>
> Three law enforcement agencies responded to the scene of the crash – Catawba Island Police Department, Ottawa County Sheriff's Office, and the Ohio State Highway Patrol.
>
> Officers from the Sheriff's Office and Catawba Island PD arrived on scene first. Through Catawba Island PD Sgt. Stewart's dash-cam footage, the Defendant can be seen walking around the crash site, making phone calls, going to his truck to get a coat, and then zipping up said coat. Throughout the video, the Defendant's words were not slurred, his motor functions were normal, and he did not show any indications of impairment. The Defendant does not appear impaired in that video.
>
> Shortly after the events shown on the Catawba Island PD dash-cam footage, OSHP Tpr. Zavalla [sic] arrived on scene and took the lead in the investigation. When Tpr. Zavalla [sic] came into contact with the Defendant, the Defendant's speech

4.

was not slurred and the Defendant was not stumbling. Tpr. Zavala noticed an odor of alcohol on the Defendant's breath, so he decided to conduct field sobriety testing.

Tpr. Gutman witnessed Tpr. Zavalla [sic] conducting field sobriety testing in full view of Tpr. Zavalla's [sic] dash-cam. But, Tpr. Gutman's recollection of the field sobriety test is limited, in that he testified he does not remember whether the Horizontal Gaze Nystagmus (HGN) test was conducted inside or outside the vehicle. He was unable to provide specific details related to the Defendant's performance on the test in testimony.

Tpr. Zavalla [sic] confirmed that the field sobriety testing was recorded, and he reviewed the dash-cam recording at some point before the video was destroyed. Tpr. Zavalla's [sic] recollection of the Defendant's performance on the field sobriety tests was also limited. He reviewed his report prior to testifying at the hearing, and the report indicated that the Defendant displayed 4/6 clues on the HGN test, 3/8 clues on the Walk and Turn test, and 3/4 clues on the one leg stand. Again, he was unable to provide specific details related to the Defendant's performance on the test in his testimony. For example, he could not recall whether the HGN test was conducted while the Defendant was in the car or in front of the cruiser's lights, he could not recall how far the Defendant's heel and toe were separated during the walk and turn to signify the clue of "failure to touch heel to toe," and he did not recall how many times the Defendant put his foot down for balance during the one leg stand. His memory consisted of the clues that were marked in his report that he had reviewed before testifying.

After the tests were completed, Tpr. Zavalla [sic] arrested the Defendant for Operating a Vehicle Under the Influence….

{¶ 11} The trial court went on to detail the numerous efforts of attorney McGookey and the assistant prosecutor to obtain the dash-cam videos from the three Ohio State Highway Patrol troopers' vehicles that responded to the scene of the crash on

5.

March 3, 2022. Toward the end of this recitation, the trial court made the following final

findings:

> On April 20, 2023, Assistant Prosecutor Matuszak again reached out to the Post for dash-cam videos of the troopers. On April 25, 2023, he did so yet again. That time, he was informed the Post could not find any such videos for any of the three troopers who were at the scene. Sgt. Jeff Kaess surmised that the troopers simply failed to flag the videos for preservation, and the system overwrote the videos by default 90 days later, making them unrecoverable.
>
> The State of Ohio has not produced to the Defendant in discovery the dash-cam videos of the troopers' vehicles that responded to the scene of the crash on March 3, 2022. The State of Ohio has never had possession, custody, or control of those videos.
>
> Two of the Ohio State Highway Patrol's records retention policies are relevant herein. The first policy, in place at the time of the crash and initial investigation, provided in relevant parts that 'audio, and video recordings and dash cam footage not used in a court case are to be retained for 180 days' and '[e]videntiary audio and/or video recordings and dash cam footage used in case investigations or court proceedings are to be retained for two (2) years or until criminal, civil, and/or administrative proceedings are complete, whichever is longer.' The policy changed in May 2022 while this case was still under investigation. The new policy requires that "all evidentiary recordings…used in criminal or civil proceedings…must be held for a minimum of two years.'
>
> All three Troopers agreed at the hearing that there is no way the dash-cam evidence would have been deleted within seven (7) days of the accident, and likely not even prior to ninety (90) days after the accident.

6.

{¶ 12} Using these facts, the trial court determined, first, that it was the States' burden to show that the destroyed evidence was "solely inculpatory," and second, that the State failed to prove that Tpr. Zavala's dash-cam video, "destroyed after [Jones's] request for same and against OSHP's own records retention policy, [was] solely inculpatory."

{¶ 13} In addition, the trial court found that Jones demonstrated that the disputed evidence could not be obtained through "alternate channels." Specifically, the trial court stated:

> There is simply no other means that the Defendant can obtain comparable evidence to the destroyed dash-cam video in this case. Cross-examination of the troopers present at the scene of the crash is not a valid substitute for the actual video footage of the field sobriety testing, especially considering their inability to recall specific details beyond what is reflected in the written report.

{¶ 14} The trial court further stated:

> In the context of this case, the Defendant's request for discovery had exactly the same effect as making a public records request would have had. Not only would a public records request have been treated the exact same way as a discovery demand, just like the Defendant's request for discovery, it is unlikely the video evidence would have been turned over to the Defendant anyway, in the midst of the ongoing investigation.

{¶ 15} The State timely filed an appeal from the trial court's decision.

7.

## Assignments of Error

{¶ 16} On appeal, appellant asserts the following assignments of error:

> I. The trial court committed reversible error because it employed the wrong legal standards as it relates to "materially exculpatory" evidence.
>
> II. The trial court committed reversible error when it applied the wrong legal standards regarding the loss or destruction of "materially exculpatory" evidence and dismissed Appellee's indictment in toto.
>
> III. The trial court committed reversible error when it applied the wrong legal standards and failed to consider that Appellee had not proven that Trooper Zavala's dash-camera video had been lost or destroyed in "bad faith."
>
> IV. The trial court committed reversible error when it relied upon the Ohio State Highway Patrol's records-retention policies as a basis to dismiss Appellee's indictment for a perceived due process violation.
>
> V. The trial court committed reversible error when it dismissed (with prejudice) Counts Two, Four and Five because none of those charges require Appellant to prove that Appellee was impaired.

## Law and Analysis

{¶ 17} "'[W]hen reviewing a trial court's ruling on a motion to dismiss arising from an alleged due process violation based on destroyed or missing evidence, we defer to the factual findings of the trial court while applying a de novo review of the trial court's application of the facts to the law.'" *State v. Urbanski*, 2023-Ohio-3966, ¶ 16 (6th Dist.), quoting *State v. Walker*, 2022-Ohio-1684, ¶ 33 (10th Dist.).

8.

{¶ 18} "The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects an accused from being convicted of a crime when the State either fails to preserve materially exculpatory evidence or destroys, in bad faith, potentially useful evidence." *State v. Nastick*, 2017-Ohio-5626, ¶ 8 (9th Dist.), citing *California v. Trombetta*, 467 U.S. 479, 489 (1984); *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). "Specific tests are applied to determine whether the [S]tate's failure to preserve evidence rises to the level of a due process violation. The test depends on whether the lost or destroyed evidence involves 'material exculpatory evidence' or 'potentially useful evidence.' *State v. Powell*, 2012-Ohio-2577, ¶ 73.

{¶ 19} "Evidence is constitutionally material when it possesses 'an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *Id.* at ¶ 74, quoting *Trombetta* at 489. "Evidence is materially exculpatory "'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome."'" *City of Toledo v. Sanders*, 2023-Ohio-2092, ¶ 26, quoting *State v. Johnston*, 39 Ohio St.3d 48, 61 (1988), quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial does not establish 'materiality' in the constitutional sense." (Quotations omitted.) *Toledo v. Zapata*, 2015-Ohio-3946, ¶ 9

9.

(6th Dist.), citing *State v. Jackson*, 57 Ohio St.3d 29, 33 (1991), quoting *United States v. Agurs*, 427 U.S. 97, 109 (1976). "When the state fails to preserve materially exculpatory evidence, it per se violates a defendant's right to due process." *Sanders* at ¶ 26, citing *Powell* at ¶74, citing *Trombetta* at 489.

{¶ 20} On the other hand, evidence is potentially useful if "no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood* at 57. "Where the [S]tate's failure to preserve concerns potentially useful evidence, a due process violation will only be found where the defendant demonstrates that the state acted in bad faith." *Sanders* at ¶ 27, citing *State v. Geeslin*, 2007-Ohio-5239, ¶ 10. "Bad faith generally requires something more than bad judgment or negligence; it requires dishonesty, conscious wrongdoing, ulterior motive, or ill will." *State v. Daoust*, 2021-Ohio-4400, ¶ 33 (6th Dist.), citing *Powell* at ¶ 81.

{¶ 21} "Ordinarily, a defendant bears the burden of demonstrating that the lost evidence was materially exculpatory or, in the case of potentially useful evidence, that the state acted in bad faith." *Sanders* at ¶ 30, citing *Daoust* at ¶ 35. However, this court has recognized an exception to this rule in cases where a defendant makes a specific request to have the evidence preserved and the evidence is lost or destroyed after the prosecution is put on notice of the defendant's request. *Id.*, citing *Daost* at ¶ 35. In such cases, "the burden shifts to the [S]tate to show that the evidence was not materially exculpatory." *Id.*, citing *Daoust* at ¶ 35, citing *State v. Benton*, 136 Ohio App.3d 801, 805 (6th Dist. 2000), citing *Columbus v. Forest*, 36 Ohio App.3d 169, 173 (10th Dist. 1987);

10.

*but see State v. Beavers*, 2012-Ohio-6222, ¶ 12-26 (2d Dist.) (rejecting the burden-shifting approach as unsanctioned by either the Supreme Court of Ohio or the Supreme Court of the United States). If the state fails to carry this burden, the defendant must still show that the evidence could not have been obtained by other reasonable means. *Benton* at 805, citing *Forest* at 173.

**First Assignment of Error**

{¶ 22} In the current case, the parties do not dispute that the burden-shifting mechanism was triggered in this case, placing the burden on the State. The State's quarrel, as argued in its first assignment of error, is with the trial court's suggestion that the State had to prove that the lost or destroyed evidence was "solely inculpatory," rather than that the lost or destroyed evidence was not "materially exculpatory." According to the State, the "solely inculpatory" standard is a "practically impossible standard" that is not the "constitutionally-mandated" standard, and, thus, the decision of the trial court should be reversed.

{¶ 23} As indicated above, this court's review in this appeal requires us to defer to the factual findings of the trial court while applying a de novo review to its application of the facts to the law. *Urbanski*, 2023-Ohio-3966, at ¶ 16. We note that where a trial court fails to articulate a correct legal standard and fails to make findings to indicate that the trial court implemented the correct legal standard, a case is properly remanded to the trial court for additional proceedings. *See State v. Saxon,* 2009-Ohio-6905, ¶ 12-13 (9th Dist.) (case remanded to trial court where the trial court in granting a motion to dismiss failed to

11.

state the applicable legal standard and failed to make findings as required under that standard). However, Ohio law also provides that "'[w]here the trial court enters a legally correct judgment but articulates an incorrect rationale for doing so, a court of appeals nonetheless affirms as a matter of law, because there has been no prejudice to the appealing party.'" *State v. Maddox*, 2021-Ohio-586, ¶ 13 (10th Dist.), quoting *State v. Roberts*, 2016-Ohio-4806, ¶ 23 (7th Dist.), citing App.R. 12(B).

{¶ 24} Upon a careful reading of the trial court's decision, we do not find that the trial court employed an incorrect standard in rendering its decision. While it quoted and ultimately relied upon the "solely inculpatory" verbiage set forth in the First District Court of Appeals decision in *State v. Palmer*, 2023-Ohio-1554, ¶ 13 (1st Dist.), it also interchangeably quoted and utilized in its analysis the arguably distinguishable "materially exculpatory" language that this court employed in *Sanders*, 2023-Ohio-2092, at ¶ 30. As will be evident in our analysis of the State's second and third assignments of error, any error in the trial court's use of the term "solely inculpatory," as opposed to "materially exculpatory," had no discernible impact on the substance or focus of the trial court's analysis and related fact finding, and, thus, did not result in prejudice to the State. Accordingly, the State's first assignment of error is found not well-taken.

### Second Assignment of Error

{¶ 25} The State initially argues in its second assignment of error that Trooper Zavala's lost/destroyed dash-cam video was not "materially exculpatory." Assuming, without deciding, that the "not materially exculpatory" standard is the proper standard

12.

and that the "solely inculpatory" standard is not, we find that the burden-shifting remedy may nevertheless "impose upon the [S]tate a nearly impossible task in some cases. Just as few criminal defendants are able to prove the apparent exculpatory value of lost or destroyed evidence, so, too, will the [S]tate have a similar problem in attempting to prove the evidence was not exculpatory." *Forest,* 36 Ohio App.3d 169, at 173.

{¶ 26} Here, the trial court determined that the troopers who testified could not remember with any specificity the events and interactions that were depicted on the lost/destroyed video and that the only details that were recited in testimony were those that were included in the report. Under such circumstances, the troopers' testimony might well be found insufficient to accomplish the difficult, if not "nearly impossible," task of proving that the lost/destroyed evidence was not materially exculpatory.

{¶ 27} The State, for its part, argues that it was able to meet its burden of proof simply because it had directly asked Trooper Zavala whether there was anything "materially exculpatory" or even "potentially useful" in the dash-cam video and Trooper Zavala's answer was no. Belying this testimony, however, was Trooper Zavala's testimony on cross-examination as to portions of the sobriety testing that Jones *did* pass. For example, Trooper Zavala testified that Jones did not start the walk and turn test too soon, he did not stop the walk to turn and steady himself, he did not raise his arms six inches for balance, he did not state that he could not do the test, and he did not step off the line while walking. Here, the trial court obviously made a credibility determination and concluded that the State failed to carry its burden.

13.

**{¶ 28}** Next, the trial court found that certain evidence provided by the State actually *contradicted* the suggestion that Jones was impaired. In video taken at the scene, Jones was shown walking around the crash site without stumbling or losing balance and making phone calls and talking to law enforcement officers without slurring his speech. In addition, he was depicted going back to his car to retrieve a coat, which he zipped up without exhibiting issues with dexterity. Still other video footage shows that the crash occurred as a result of the victim failing to stop at a stop sign and pulling into traffic in front of Jones. No evidence was provided to show that Jones operated his vehicle improperly. In addition, Trooper Zavala testified that Jones was observed to be cooperative, was not slurring his speech, and was not stumbling or losing balance, following the crash.

**{¶ 29}** In order for the State to convict Jones of aggravated vehicular homicide as a felony of the second degree, it must prove that Jones, while operating a motor vehicle, caused the death of another as the proximate result of committing an OVI offense. *See* R.C. 2903.06(A)(1)(a). Given the conflicting evidence as to a crucial element of the offense in this case, we do not find that the State has shown that the missing video, which almost certainly would have depicted Jones's performance during the sobriety testing in greater detail than the troopers were able to recall, was not materially exculpatory.

**{¶ 30}** We note, as did the trial court, that "[m]aterially exculpatory evidence can include evidence that has an exculpatory value solely because of its tendency to impeach the credibility of a government witness." *State v. Palmer*, 2023-Ohio-1554, at ¶ 11.

14.

Because the State has failed to prove that the trooper's testimony about administration and scoring of the field sobriety tests could not have been impeached with evidence from the dash cam video, the State has not shown that the missing video was not materially exculpatory.

{¶ 31} Next, the State contends that regardless of its success in carrying its burden, Jones has failed to establish the second prong of the materially exculpatory test, which requires Jones to show that the evidence could not have been obtained via other reasonably availably means. *See State v. Powell*, 2012-Ohio-2577, at ¶ 74. Specifically, the State argues that Jones "could have submitted a public records request to the Ohio State Highway Patrol at any time," and had he done so, "it would have prompted the Ohio State Highway Patrol to automatically preserve Trooper Zavala's dash-camera [video] for a longer period of time."

{¶ 32} We reject this argument, first because it is unsupported by any authority, but also because it ignores the discovery responsibility that is bestowed upon the State and the fact that a preservation request is at least as important, if not superior to, a public records request. A ruling that would require defendants to file public records requests in every case in addition to discovery requests simply to preserve their constitutional right to due process would be unconscionable, and we decline to make it here. For the foregoing reasons, the State's second assignment of error is found not well-taken.

15.

## Third Assignment of Error

{¶ 33} The State baldly asserts in its third assignment of error, that Trooper Zavala's dash-cam video was, at best, "potentially useful," rather than "materially exculpatory," and, thus, the trial court should have made a determination as to whether the missing video had been lost or destroyed in bad faith. Here, because the state failed to show that the missing video was not materially exculpatory, the question of whether it was merely "potentially useful" simply did not arise and, thus, no bad faith analysis was required. The State's third assignment of error is found not well-taken.

## Fourth Assignment of Error

{¶ 34} The State argues in its fourth assignment of error that the trial court committed reversible error when it relied upon the Ohio State Highway Patrol's records-retention policies as a basis for dismissing the State's indictment for a due process violation. In support of this argument, the State cites case law that suggests that there is no independent remedy of suppression or dismissal simply because an agency violates its own internal policies.

{¶ 35} In this case, however, the trial court never found that a violation of the data retention policies created any presumption for dismissal or created any kind of per se remedy. In stating that "the State has failed to prove that Tpr. Zavala's dash-cam video, destroyed after the Defendant's request for same and against the OSHP's own records retention policy, is solely inculpatory," the trial court appears merely to have put into parenthetical context -- both literally and figuratively -- the circumstances relating to the

16.

request for the video and the video's ultimate disappearance. This was not improper, nor does it provide grounds for reversal in this case. Accordingly, the State's fourth assignment of error is found not well-taken.

**Fifth Assignment of Error**

{¶ 36} The State argues in its fifth assignment of error, and for the first time on appeal, that the trial court committed reversible error when it dismissed with prejudice Counts Two, Four and Five "because none of those charges required the State to prove that Jones was impaired."

{¶ 37} "'[A]rguments raised for the first time on appeal are generally barred.'" *State v. Sokevitz*, 2024-Ohio-4727, ¶ 10, (6th Dist.), quoting *Lester v. Don's Automotive Group, LLC*, 2021-Ohio-4397, ¶ 49 (6th Dist.). "Indeed, arguments not presented at the trial court are waived on appeal." *Id.*, citing *LaCourse v. LaCourse*, 2023-Ohio-972, ¶ 23 (6th Dist.). Because the State failed to assert before the trial court that Jones's remedy for the State's due process violation should be limited to the dismissal of the charges that have an element of impairment, we consider the argument to have been waived and, thus, we decline to consider it now. Appellant's fifth assignment of error is found not well-taken.

17.

**Conclusion**

**{¶ 38}** The judgment of the Ottawa County Court of Common Pleas is affirmed.

Appellant is ordered to pay the costs of appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
                          JUDGE

Gene A. Zmuda, J.

_____
Myron C. Duhart, J.                          JUDGE
CONCUR.

_____
                          JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.